IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RONALD FEDERICI )
)
       Plaintiff, ) Civil No. 10-1418
)
   VS. ) March 4, 2011
)
MONICA PIGNOTTI, et al., )
)
     Defendants. )
_____)

REPORTER'S TRANSCRIPT

MOTIONS HEARING

BEFORE:    THE HONORABLE GERALD BRUCE LEE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

 FOR THE PLAINTIFF: DOMINGO J. RIVERA, ESQ.

 FOR THE DEFENDANT: COCHRAN & OWEN
BY: KRISTEN ZECH, ESQ.

CARR MALONEY PC
BY: SARAH BAGLEY, ESQ.
       ---

OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR,CRR
U.S. District Court
401 Courthouse Square, 5th Floor
Alexandria, VA  22314
(703)501-1580

INDEX

ARGUMENT BY THE PLAINTIFF      17

ARGUMENT BY THE DEFENDANTS      3, 8, 15

RULING BY THE COURT            27

---

```
 1              (Thereupon, the following was heard in open
 2    court at 12:00 p.m.)
 3              THE CLERK:  1:10 civil 1418, Ronald F.
 4    Federici versus Monica Pignotti, et al.
 5              Would counsel please come forward and state
 6    your appearances for the record.
 7              MR. RIVERA:  Good morning, Your Honor.
 8    Domingo Rivera for plaintiff, Ronald Federici.
 9              THE COURT:  Good morning.
10              MS. BAGLEY:  Good morning, Your Honor.  Sarah
11    Bagley.  I'm here on behalf of ACT, Charly Miller, Larry
12    Sarner and Linda Rosa.
13              THE COURT:  Good afternoon.  It's now 12:01.
14              MS. ZECH:  Good afternoon, Your Honor.
15    Kristen Zech of Cochran and Owen.  I'm here on behalf of
16    defendants, Jean Mercer and Monica Pignotti.
17              THE COURT:  Pronounce your name one more time
18    for me.
19              MS. ZECH:  Kristen Zech.
20              THE COURT:  Z-E-C-K?
21              MS. ZECH:  Z-E-C-H, Your Honor.
22              THE COURT:  Thank you.  I'm ready.
23              MS. BAGLEY:  Your Honor, good morning or good
24    afternoon as it is now.
25              As I stated, I'm here of behalf of ACT,
```

 1   Mr. Sarner and Mrs. Rosa and Miller.

 2              This case is, from our position baseless, but

 3   more importantly, it's in the wrong place.  These

 4   defendants have zero contact with this jurisdiction.

 5              THE COURT:  So what is the issue?

 6              MS. BAGLEY:  There is no personal

 7   jurisdiction over those defendants in this court, and

 8   additionally service has not been properly made because

 9   the Long-Arm Statute is not satisfied, and therefore the

10   method of service attempted by the defendant is

11   deficient.

12              There is simply no contact to support a tort

13   being comitted by my clients within the jurisdiction.

14              THE COURT:  This is a case involving postings

15   on the Internet of information allegedly about

16   Mr. Federici; is that right?

17              MS. BAGLEY:  That's correct, Your Honor.

18              THE COURT:  What acts, if any, demonstrate

19   purposeful availment of Virginia law by your clients?

20              MS. BAGLEY:  Your Honor, I would argue that

21   there are no acts that demonstrate a purposeful

22   availment.

23              Their goal is actually to communicate on a

24   much broader level to anybody who has access and interest

25   in these issues.  They do not advertise to, you know,

1    Virginia consumers.  They do not seek out subscribers or

2    donations.  They do not run advertisements for their

3    website in Virginia publications.  They don't perform

4    interviews in the state.

5              THE COURT:  Well, Virginia residents can

6    access the Internet and read those postings, can't they?

7              MS. BAGLEY:  Certainly they can, but so could

8    anyone anywhere, which is the beauty, in a way, of the

9    Internet is that it's an easy way to access everyone.

10             And as the *Young* case that actually was not

11   cited in my brief, Your Honor, but was cited in the

12   co-defendant's brief, *Young v. New Haven*, it's a great

13   case on point --

14             THE COURT:  Is that the case involving the

15   warden in Virginia?

16             MS. BAGLEY:  It is, Your Honor.

17             THE COURT:  And the newspapers in New Haven

18   publishing information about the jail?

19             MS. BAGLEY:  They were.  And they, obvious,

20   you know, had jurisdiction and published a paper in New

21   Haven.  But their Internet postings, just like the

22   Washington Post or anything else, is accessible by people

23   anywhere.

24             It does not make people that read the Post in

25   California -- you know, suddenly the Washington Post has,

1   you know, personal jurisdiction out there in California.

2            The same thing is true here.  Without

3   demonstrating that they reached out to Virginia, that

4   they had some particularized interest in this state and

5   tried to establish, you know, stream of communication or

6   a stream of commerce, there's nothing that targeted this

7   forum.  Rather --

8            THE COURT:  Well, what about that *Jones* case

9   in California where the person was writing an article

10  about this -- I guess it was an actress or actor who

11  lived in California, and the publication I think was the

12  National Inquirer or some other --

13           MS. BAGLEY:  Well, they've been right about a

14  few things recently, so I wouldn't want to dismiss them.

15           But the significant difference here is, with

16  this particular case, with Dr. Federici --

17           THE COURT:  There was no Internet back then,

18  was there?

19           MS. BAGLEY:  Well, no.  Maybe Al Gore can

20  better attest to that, but no.

21           THE COURT:  All right.  Well, that would be a

22  distinction between *Calder versus Jones* and this case and

23  that is in that case you're talking about a newspaper

24  publication in California about an actress in California

25  and it's distinct from somebody publishing something on

1    the Internet.

2              MS. BAGLEY:  Exactly.  I mean I think it's

3    significantly distinguished, well, for several reasons.

4              They're not targeting -- they knew that she

5    was there and that she lived there and that potentially

6    would impact her reputation there.

7              Conversely, my clients are trying to

8    communicate to anyone anywhere on these types of

9    information.

10             The fact that this one doctor of many who

11   they addressed happens to be located here does not mean

12   that he is their target.  It does not mean that that's

13   their target audience.  It means that's where he happens

14   to be.  He could move to another state.

15             You know, I'm also not implying, Your Honor,

16   that my clients are somehow above the law simply because

17   they communicate via the Internet.

18             There is obviously personal jurisdiction that

19   exists over them where they act.  So, you know, by

20   posting on the Internet, they're not placing themselves

21   outside of civil torts.

22             THE COURT:  Well, can you tell from this

23   complaint what defendant did what?

24             MS. BAGLEY:  Exactly.  I mean this is exactly

25   the problem, Your Honor.  How could --

1      THE COURT:  What is the problem?

2      MS. BAGLEY:  The problem is that we have, on

3  the jurisdictional point -- and to be clear, Your Honor,

4  we're here today, you know, primarily on the

5  jurisdictional point.

6          How can we even tell what acts would

7  theoretically underlie jurisdiction since repeatedly all

8  the complaint says is defendants, defendants.  Defendants

9  admitted this act.  Defendants said these items.  You

10  need to point to at least one act per witness.

11      THE COURT:  Well, I think that I understand

12  your position.  Let me hear from plaintiff's counsel.

13      MS. ZECH:  Excuse me, Your Honor, just a

14  moment.  May I speak on behalf of the defendants

15  before --

16      THE COURT:  Yes.

17      MS. ZECH:  -- unless the Court --

18      THE COURT:  Yes, you can.  Come on up,

19  Ms. Zech.

20      MS. ZECH:  Thank you, Your Honor.  And I

21  apologize for interrupting.

22      THE COURT:  Oh, you're not interrupting.  I

23  think the issues are the same in both cases, aren't they?

24      MS. ZECH:  They are, Your Honor.  In this

25  particular case, defendants Mercer and Pignotti have also

1  raised 12(b)(6) defenses, and if the Court would like to

2  briefly address those, I will add those in.

3          THE COURT:  Sure, go ahead.

4          MS. ZECH:  Just to speak very briefly on the

5  jurisdictional issue as to my defendants, the defendants

6  that I'm here on behalf of, neither of these defendants

7  are advertising in Virginia.  They are both academics.

8          Dr. Mercer is a professor emerita in New

9  Jersey.  She does not teach in Virginia.  She has never

10  taught in Virginia.

11          Dr. Pignotti resides in Florida.  She does

12  not work in Virginia.  She has never worked in Virginia.

13          Under the circumstances their only contact at

14  least as plaintiff alleges with Virginia is the fact that

15  there were Internet postings.

16          And I would commend the case of *Mealer versus*

17  *GMAC* which is out of the District Court of Arizona but is

18  very similar in this case for the Court's consideration.

19          And what the Court said there is if putting

20  something on the Internet, and we adopt that theory, then

21  somebody is subject to jurisdiction anywhere, and that

22  simply can't be the case.

23          Your Honor, and I'm happy to address any

24  concerns the Court may have as to the jurisdictional

25  issue without going further on that.

1          THE COURT:  I do.  Well, plaintiff says that

2    they sufficiently allege interference with contract

3    because two appointments were canceled by potential

4    patients who said they canceled them because of things

5    they read on the Internet.

6          Would that be sufficient to state a claim for

7    tortious interference with contract for business

8    expectancy?

9          MS. ZECH:  Your Honor, we would submit that

10   it's not.  First of all, I think there is some

11   inconsistency as to what's being alleged.

12         There are appointments noted for a very

13   limited period of time, I believe a week, and another

14   random appointment out there.  We don't know whether

15   those were contracts that had been entered into, whether

16   they were expectancies.

17         It's just too vague, Your Honor, in our

18   perspective to actually assert a claim for tortious

19   interference with contract.

20         We have a total of $300,000 and, you know,

21   I'm not expecting plaintiffs to itemize contract by

22   contract, but there's no name.  There's no indication of

23   what's going on in connection with these tortious

24   interference claims.  There is no specificity at the end

25   of the day.

1        THE COURT:  Well, Dr. Pignotti also
2  challenges the allegations of libel, and I think I have
3  up here one of these exhibits where she is talking about
4  Dr. Federici contacting her via the school.
5        MS. ZECH:  That's correct, Your Honor.
6        THE COURT:  Does she appear to be responding
7  to something that she says that Mr. Federici did?
8        MS. ZECH:  Yes, Your Honor.  And I believe
9  what becomes clear in looking at the statements that were
10  allegedly made of which plaintiffs complain is they can
11  be really divided into three categories.  And this is
12  just speaking to Dr. Pignotti.
13        THE COURT:  This is Exhibit H.
14        MS. ZECH:  Yes, that's correct.  And just for
15  the record, Your Honor, Dr. Mercer, there's nothing in
16  the complaint that connects Dr. Mercer to any of these
17  statements.  And for that reason we don't see any --
18        THE COURT:  There's no allegation that
19  Dr. Mercer did anything.
20        MS. ZECH:  That's correct.
21        THE COURT:  Other than she's listed as a
22  defendant.
23        MS. ZECH:  Correct.  And if the Court should
24  proceed pass the issue of personal jurisdiction which we
25  again submit has not been satisfied here, we would ask

1    that the case be completely dismissed as to Dr. Mercer.

2              As to Dr. Pignotti, all four of the postings

3    that have been attributed to Dr. Pignotti we think can be

4    divided into three categories, statements in which she is

5    responding to personal accusations, which certainly she

6    is able to do.  She has the ability to defend her

7    character and reputation.  And that was similar to the

8    *Schnare* case which is out of the Fourth Circuit and cited

9    in our brief.

10             The second is really her comments and her

11   opinions on the therapeutic methods that are advocated by

12   Dr. Federici as well as other practitioners who are

13   advocating similar methods.

14             THE COURT:  So if someone criticizes

15   someone's method of treatment, that does not necessarily

16   constitute libel?

17             MS. ZECH:  Correct, Your Honor.  And I would

18   refer the Court to *Arthur versus Offit* which is actually

19   out of this very court.  And what the Court basically

20   said -- and that was a case involving the mandatory

21   vaccination of children.  This is an academic debate.

22   This is not an issue for the Court to resolve.

23             There are differences of opinion, but that's

24   an academic debate.  That is not an issue that should be

25   before the Court, and that's a similar ruling in the

1  *Schnare* case which involved the breed standards for

2  Labrador retrievers.

3  And then the third category of documents, I'm

4  sorry, statements that Dr. Pignotti's postings can be

5  categorized into are really statements where she's

6  commenting upon the process that has occurred.

7  As the Court can see from the postings and

8  the prior pleadings in this case, there has been some

9  interaction between the two camps on this issue for a

10  period of time here.  Dr. Pignotti's simply commenting

11  upon that.

12  Again --

13  THE COURT:  Well, is Mr. Federici a public

14  figure?

15  MS. ZECH:  Your Honor, we would assert that

16  he is.  The way that he has touted himself not only in

17  his pleading as is clear to the Court in terms of him

18  being internationally renown, but also a very quick visit

19  to his website demonstrates that he is traveling around

20  the world, that he is speaking throughout the United

21  States and abroad.

22  His most recent -- well, I shouldn't say most

23  recent, but his post in January of 2011 on his own blog

24  indicated that he is now traveling now around the country

25  to treat children in their own homes.

1              A brief search on Lexus revealed two cases,

2    not only the *Salvetti* case where he was treating an

3    individual from North Carolina but also a case out of New

4    Hampshire where the family actually traveled to Virginia

5    to be treated by Dr. Federici.

6              Your Honor, this also goes to the Court's

7    earlier point about whether Virginia was the targeted

8    focus of any actions of these --

9              THE COURT:  My intentions was not activity

10   expressly aimed at Virginia.

11             MS. ZECH:  Correct.

12             THE COURT:  And I think the *Care First* case

13   and there are other Fourth Circuit cases like the New

14   Hampshire case that say that posting someone on the

15   Internet in and of itself is not sufficient.

16             MS. ZECH:  Correct, Your Honor, we agree.

17   And we believe that the circumstances here demonstrate

18   that Dr. Federici has -- does not have just the Virginia

19   audience as he has maintained but that his audience is

20   much more widespread, both domestically and abroad.

21             THE COURT:  Hold on just one second.

22             MS. ZECH:  Certainly, Your Honor.

23             THE COURT:  I've asked you the questions that

24   I have.  I want to ask Ms. Bagley additional questions.

25             MS. ZECH:  Thank you, Your Honor.

1    THE COURT:  Yes, I want to ask Ms. Bagley a

2 question.

3    I have a transcript here from the General

4 District Court in Fairfax.  Were you involved in that

5 case?

6    MS. BAGLEY:  I was not, Your Honor.

7    THE COURT:  Was -- were any of your clients

8 present or represented in that case?

9    MS. BAGLEY:  ACT -- to be clear, the three

10 defendants in the General District Court matter were ACT,

11 Charly Miller and Ms. Mercer.

12    May I invite Ms. Zech to correct me if that's

13 inaccurate.

14    MS. ZECH:  That is correct, Your Honor.

15    If I may, Ms. Bagley, Ms. Mercer did appear

16 and she was present at that time.

17    THE COURT:  Right.

18    MS. BAGLEY:  Now, with regard to ACT and

19 Ms. Miller, both of them filed special appearances

20 challenging jurisdiction with the Court.

21    Ms. Miller filed a request for a continuance

22 and a challenge to jurisdiction.  There's a portion in

23 the transcript where the General District Court judge

24 acknowledged I've received that.  I'll take it under

25 advertisement.  And then ultimately he granted favor --

1  judgment in favor of all the defendants in that matter

2  effectively --

3          THE COURT:  So what happened to the motion to

4  challenge jurisdiction?

5          MS. BAGLEY:  Well, ACT filed a demur

6  challenge -- filed a special appearance to challenge

7  jurisdiction.

8          Ms. Mercer appeared, and as the transcript

9  sort of unfold you can see that the General District

10  Court judge just sort of dove into things and started

11  taking testimony on the matter, although he had stated

12  early on, here's how we will do this.  I'll hear your

13  motions, I'll hear your motions, then we'll get going.

14  Then he sort of plowed right in.

15          Ms. Mercer at the end did attempt to point

16  out to the judge, Your Honor, I had intended to argue

17  jurisdiction.  He said, well, I'm going to rule in your

18  favor anyway.  That's that.

19          My position on it, Your Honor, is that none

20  of that matters.  I mean, I'll be honest with you.

21          THE COURT:  What happens with the Fairfax

22  Circuit Court of Appeal?  Was it appealed?

23          MS. BAGLEY:  It was appealed and the appeal

24  was nonsuited, and the nonsuit re-filing period expired

25  on the second of this month, so two days ago.

```
 1            So our position is -- and I have case law to
 2   support this -- that that entire action is a nullity.
 3   The General District Court transcript and the rulings
 4   there were appealed de novo.  So we would have had a
 5   whole new trial.
 6            We would have again -- we did file -- ACT and
 7   Ms. Miller did file special appearance via demurrer to
 8   challenge jurisdiction, and that's where that case was at
 9   when it was nonsuited, not refiled.  It makes the entire
10   matter a nullity.
11            So I don't believe there's been any waiver as
12   to our personal jurisdiction argument or that there's
13   been any dispositive ruling that would in anyway bind
14   this Court.
15            THE COURT:  All right, thank you.
16            I'm ready now, Mr. Rivera.
17            MR. RIVERA:  Yes, Your Honor.  Your Honor,
18   was concerned about purpose of availment of Virginia as a
19   forum.  Well this defendant, although they say they're
20   just giving out general information, that does not appear
21   to be true.
22            Looking just at the first exhibit in the
23   complaint, the term "Virginia" appears at least 89 times.
24   And, it appears significantly more.  There's hardly any
25   other states that's even mentioned other than Virginia.
```

1    THE COURT:  Well, Dr. Federici's practice is

2    based here in Virginia; is that right?

3    MR. RIVERA:  Yes, Your Honor.  His practice

4    is based here.

5    THE COURT:  Well, help me with your view.  Is

6    it sufficient if someone posts on the Internet comments

7    or criticism of Dr. Federici knowing that he practices in

8    Virginia, is that expressly aiming activity at Virginia?

9    MR. RIVERA:  That is part of what is

10    considered.  I think we have more than that here.

11    We also have a defendant that actually

12    registered a domain name through a company based in

13    Virginia.  That is Network Solutions, also utilized

14    Network Solutions services which has an agreement that

15    says that any disputes that come from the use of that

16    domain name, which is what we have in this case, are to

17    be resolved in the U.S. District Court for the Eastern

18    District of Virginia in Alexandria.

19    THE COURT:  Network Solutions is not a party

20    to this case, are they?

21    MR. RIVERA:  No, Your Honor, but they have

22    agreed to be bound to Virginia if there is any dispute,

23    not only with Network Solutions.  It says any disputes.

24    It says something about third party complaints, also,

25    that need to be addressed in the -- in either Alexandria

1    or where the party resides.  But Alexandria is obviously

2    given there.  They agreed to that.

3            They have used the Network Solutions --

4            THE COURT:  So, under your view of the

5    Network Solutions' domain name registration contract, any

6    party who has a domain name registered with Network

7    Solutions and they have a dispute with a third party of

8    any kind, they could bring it into federal court in

9    Virginia?

10           MR. RIVERA:  Not by itself, Your Honor.  I

11   think it's part of the -- since the Court is looking at

12   the fairness of the entire situation --

13           THE COURT:  I'm not looking at the fairness.

14   I'm looking at personal jurisdiction under the Long-Arm

15   Statute.

16           I'm trying to -- if your basis is they had a

17   contract or doing business in Virginia, that's one thing.

18   But you agree they're not doing business here; is that

19   right?

20           MR. RIVERA:  That is correct, Your Honor.

21           THE COURT:  Well, help me with your theory

22   that posting criticism of Dr. Federici on the Internet is

23   an availment of Virginia law or expressly aiming activity

24   at Virginia.  Help me with that.

25           MR. RIVERA:  Yes, Your Honor.

1          Number one, they have, like I mentioned

2  Virginia many times which is no surprise that they would

3  be hailed to court here.

4          They have also solicited people actively.

5  They have provided information on how to file complaint

6  against Dr. Federici with Virginia Board.

7          They have also indicated that they have been

8  researching Dr. Federici's qualifications, and they don't

9  believe he's even a doctor at all.

10          They have provided clear content that they

11  knew would be targeted and that would have its effect

12  mostly in Virginia.

13          Dr. Federici, he did as counsel indicated.

14  He has handled cases outside Virginia.  That is a very

15  small part of his practice.  He is a Virginia --

16          THE COURT:  Well, does he have a website,

17  too?

18          MR. RIVERA:  Yes, Your Honor.

19          THE COURT:  And does he post on that website

20  information about his practice and his ways of treating

21  children?  Is that on his website?

22          MR. RIVERA:  I do not know the answer to

23  that.

24          THE COURT:  Have you looked at his website?

25          MR. RIVERA:  Yes, Your Honor, I have.

1    THE COURT:  All right.  Well, is he

2  presenting himself there as an expert of some kind in the

3  treatment of children?

4    MR. RIVERA:  Yes, Your Honor.

5    THE COURT:  Then, why wouldn't he be a public

6  figure?  He hands himself out to the whole world on the

7  Internet as some kind of an expert.  Why wouldn't he be a

8  public figure?

9    MR. RIVERA:  He might be a limited public

10  figure where it relates exactly to what his posting on

11  his website and what he's telling the world his practice

12  is about.

13    The issue here --

14    THE COURT:  Hasn't he been on television and

15  in the news as well?

16    MR. RIVERA:  Yes, Your Honor.  Yes, Your

17  Honor.

18    THE COURT:  Well, how much time does he have

19  to spend on television and in the news to become a public

20  figure, Mr. Rivera?

21    MR. RIVERA:  He would -- to answer that

22  direct answer to --

23    THE COURT:  I would like a direct answer if

24  you would give me one.

25    MR. RIVERA:  I wouldn't know how to quantify

```
 1   if one appearance is enough or many.

 2            THE COURT:  He's had more than one.

 3            MR. RIVERA:  Yes, Your Honor.  He's had more

 4   than the average person.  So --

 5            THE COURT:  Well, if I accept he's a public

 6   figure, then the standard on libel and slander is

 7   different, isn't it?

 8            MR. RIVERA:  Yes, Your Honor.  I do believe

 9   that we can also meet the standard of malice, although in

10   this case given this individual is not only on the

11   Internet.  They actually have called and made complaints

12   about Dr. Federici to the board of -- Dr. Federici's

13   licensed with the Board of Psychology, and they have even

14   called and made complaints that Dr. Federici assisted in

15   the -- in the killing of a child.  And they have actually

16   not only put this online, they have actually reached out

17   to the Virginia Board to actually make the same false

18   complaints.  All of them obviously have been --

19            THE COURT:  Well, this is not a lawsuit about

20   the false complaint, not yet.  It is defamation, tortious

21   interference with contract, tortious interference with

22   business expectations and conspiracy.  There is no

23   allegation of making false complaints to Virginia

24   authorities, is there?

25            MR. RIVERA:  No, Your Honor.
```

```
 1              THE COURT:  All right.  Help me then with the
 2   issue of the tortious interference with contract rights
 3   and business expectancy here.  What you've alleged is
 4   basically that two clients -- potential clients canceled
 5   because of things on the Internet.
 6              MR. RIVERA:  Yes, Your Honor.
 7              THE COURT:  You don't focus on Dr. Pignotti
 8   or Mercer or ACT, do you?
 9              MR. RIVERA:  Well, Your Honor, all the -- all
10   this negative things comes from these defendants.  They
11   are tied together to this organization called ACT.  We
12   doesn't know who is a member.  We got one defendant who
13   appeared to be a member and represented being a member
14   then they go and file an affidavit in this court saying
15   I'm not a member.  I have nothing to do with it.
16              Then we have counsel asking for the charges
17   to be -- for the case to be dismissed based on the
18   corporation cannot conspire with itself.  But at the same
19   time, one of those people is saying I'm not a member of
20   the corporation.  So, then they can conspire with this
21   person.
22              THE COURT:  Well, that brings up another
23   point that I wanted to bring to your attention and that
24   is that as I read your complaint, there are numerous
25   references to defendants, plural, but there's no
```

1  specification of acts by individual defendants.

2       That makes it very difficult for us to

3  determine what your claim is against an individual

4  defendant.  And with respect to libel and slander, we

5  would need what the exact words were and when they were

6  made because there's a statute limitation of one year, is

7  that right, one year statute of limitation?

8       MR. RIVERA:  Yes, Your Honor.

9       THE COURT:  So we can't tell when these

10 statements were made and what statements you think were

11 made by ACT or made by Dr. Mercer or Pignotti.

12      MR. RIVERA:  Well, Your Honor, the majority

13 of these websites are controlled by the defendants.  So

14 they are the one who have the information such as IP

15 addresses, who made the comments.

16      THE COURT:  Let me make sure you understand

17 what I'm saying here.  I think that your complaint

18 suffers from what I would call group pleading.  All the

19 allegations say defendants, plural.  It does not specify

20 what a particular defendant did, said, that you claim was

21 libelous and when the statement was made which I think is

22 a pleading requirement under Virginia law for libel or

23 slander.  Do you see what I'm trying to tell you?

24      MR. RIVERA:  Yes, Your Honor.  And the reason

25 they are grouped together is that they are kind of one

1  big operation.  They are not just each individual

2  standing alone.  We know that the websites are controlled

3  by members of ACT.  That's kind of a loose term.

4         But looking at Ms. Mercer who appeared in the

5  General District Court, she referred that -- and on the

6  transcript shows that ACT, that's me, and I am such and

7  such.  We have another one who has this occupation.  We

8  have another one who has this occupation.

9         So, part of the issue here is that the

10  defendants themselves have worked as a unit somewhat

11  disguising each individual part of that unit.

12         Now, that will bear out in discovery if

13  something is on the ACT website.

14         THE COURT:  Well, I'm not going to let you go

15  but so far with this if we can't figure out who has made

16  what statements, at least some idea of what statements

17  you say are libelous.

18         Now, what allegations do you have about what

19  Dr. Mercer did?  How could I tell what Dr. Mercer did

20  from your complaint?

21         MR. RIVERA:  Yes.  Dr. Mercer has indicated

22  that she made admissions even at the General District

23  Court that she was a member of ACT and that she has

24  authored some posts regarding to what she refers as

25  information she wants the public to know about Dr.

1  Federici.  So she has a --

2          THE COURT:  I understand that.  But just to

3  say, well, she's criticized Dr. Federici in general is

4  too broad for me to figure out just what allegation you

5  say is libelous, I mean, because criticism is allowed.

6  You can criticize somebody on the Internet, can't you?

7          MR. RIVERA:  Yes, Your Honor.  And we're not

8  referring to any criticisms.  We're actually referring to

9  factual statements that can be verified.  Either Dr.

10  Federici is licensed or he's not.  Either he assisted in

11  the killing of a child or he did not.

12          THE COURT:  Well, when I see those

13  allegations set forth in a separate paragraph with a date

14  and time and a speaker, I'll be able to address that.

15          I think I've asked you the questions I have.

16          What -- your theory of conspiracy is that

17  they all criticized Dr. Federici, so they were all

18  working together.  Is that your theory of the conspiracy?

19          MR. RIVERA:  It's a little bit more than

20  that, Your Honor.  It's planned criticism.  The only

21  thing they have in common is that they criticize Dr.

22  Federici, and they do it as a unit and they talk to each

23  other and plan these attacks as opposed to just people

24  who happen to criticize him.

25          They know each other.  They claim to belong

1    to the same organization.  They claim to share ideas and
2    they talk to each other frequently and plan what they're
3    going to do against different people.
4            There was another case in Texas where they
5    did the same thing to another doctor and a judgment was
6    entered in favor of that doctor there.
7            THE COURT:  All right.  I've asked you the
8    questions that I have and I have read the briefs that
9    have been submitted.  Thank you.
10           MR. RIVERA:  Thank you, Your Honor.
11           MS. ZECH:  Your Honor, may I make a few quick
12   responses to that?
13           THE COURT:  You could but I'm prepared to
14   rule now.
15           MS. ZECH:  Thank you, Your Honor.
16           THE COURT:  Thank you.
17           This matter is before the Court on the
18   defendant's motion to dismiss the complaint, and the
19   record should reflect that the motion's made by the
20   defendant ACT, Miller, Sarner, Linda Rosa, Dr. Jean
21   Mercer and Dr. Monica Pignotti.
22           These all deal with a complaint filed by Dr.
23   Ronald Federici against these individuals for matters
24   that Dr. Federici asserts were posted about him in
25   criticizing him and his ideas about treatment of children

1  on the Internet.  And that as plaintiff's counsel's

2  pointed out, there are numerous reference to Dr. Federici

3  being in Virginia, practicing in Virginia and Virginia

4  authorities not taking any action against him for

5  techniques that they have criticized on the Internet.

6          And, the question presented is whether or not

7  the plaintiff has shown that there's personal

8  jurisdiction against these defendants in Virginia.

9          I think the precise issue was whether the

10  Court should dismiss the complaint for lack of personal

11  jurisdiction because the plaintiff cannot show that these

12  postings on the Internet were expressly aimed at

13  Virginia, and they were not the focal point of any

14  tortious activity under the effects test.

15          Let me say at the outset that the complaint

16  suffers from several deficiencies.  The first is group

17  pleading, and we really can't tell what allegations are

18  made against each individual defendant.  And that is a

19  problem that the whole complaint suffers from.

20          And because of that, it is really not clear

21  what the plaintiff asserts each defendant did and when

22  and what false statements were made that are libelous,

23  what was the statement, what was the date of it.

24          And even if we go beyond that, the question

25  is a matter of what express -- what activity expressly

```
1    aimed these matters at Virginia.
2              In dealing with personal jurisdiction, I have
3    to look at the Long-Arm Statute under 8.01328.1.  And
4    we're dealing with electronic communications.  We have to
5    look at whether an out-of-state citizen has intentionally
6    entered the state through the Internet.
7              And the Fourth Circuit has adopted the Zippo
8    Manufacturing test which both parties have briefed, and
9    I'll cite the ALS Scan versus Digital Service Consultants
10   case which sets forth the standard.
11             And, the Fourth Circuit in that case looked
12   at Calder versus Jones having to do with whether or not a
13   California court had personal jurisdiction over a Florida
14   resident who wrote a libelous article in a publication
15   which I think was the National Inquirer about an actor in
16   California and articulated the effects test.
17             And they cite the Fourth Circuit Care First
18   of Maryland.  That case is important for a couple of
19   reasons.
20             First of all in that case, it says that
21   merely posting something on the Internet is an
22   insufficient basis for personal jurisdiction.  And that's
23   in the body of the opinion.
24             The defendant's site is passive.  It merely
25   makes information available.  The site cannot render him
```

1    subject to personal jurisdiction in foreign court.

2           And what we're looking in *Zippo* is whether or

3    not the person expressly aimed activity at Virginia.

4           Counsel cited *Young versus New Haven*

5    *Advocate*, a Fourth Circuit case, very similar facts to

6    this one where a warden in Virginia complained that two

7    New Haven newspapers published articles criticizing him

8    and his activities in the prison in Virginia in

9    connecting newspapers that were also posted on the

10   Internet.  And the Court held that the Virginia court

11   could not exercise constitutional jurisdiction because

12   the plaintiffs -- the defendants did not manifest an

13   intent to aim their websites or post their articles at a

14   Virginia audience.

15          I think that case is dispositive of the

16   motion here.  So the Court will grant the motion to

17   dismiss for lack of personal jurisdiction on that ground

18   alone.

19          With respect to the motion to dismiss as it

20   relates to ACT and Mercer, ACT and Mercer have not waived

21   their objection to personal jurisdiction by participating

22   in the General District Court case.  That case was

23   appealed, and as I understand Virginia law, when a matter

24   is appealed to Circuit Court then the judgment in General

25   District Court becomes a nullity.

1          So they have not waived their right to assert

2   personal jurisdiction.  So again the motion is granted as

3   to ACT, Mercer, Miller, Sarner, Rosa and Pignotti.

4          The ACT contract with Network Solutions

5   concerning a domain name would not be a sufficient basis

6   to exercise personal jurisdiction.  And the *Christian*

7   *Science Board versus Nolan* case from the Fourth Circuit,

8   again the fact that the server is located here is not

9   enough to pursue personal jurisdiction.

10          The fact that there is a contract between

11   Network Solutions and the domain name registrant is not a

12   sufficient basis to give jurisdiction -- personal

13   jurisdiction in a dispute involving parties unrelated to

14   the Network Solutions contract.

15          And I decline to follow the magistrate

16   judge's rulings to the contrary.

17          With respect to conspiracy, there's not

18   enough here in terms of facts to demonstrate a

19   conspiracy.  And again, the fact that the plaintiff here

20   is engaged in group pleading makes it impossible to tell

21   what agreement plaintiff claims was entered into by which

22   defendants at what time to do what against Dr. Federici.

23          The fact that they all have criticized Dr.

24   Federici does not mean they've entered into an agreement

25   sufficient to support a claim for conspiracy.

1          The defamation claim, there's a motion to

2     dismiss filed by Pignotti and Mercer that does not state

3     a claim for defamation or tortious interference with

4     contract rights or business expectancy.

5          I'm going to grant that motion for several

6     reasons.  First of all, as it relates to the statements

7     themselves, I do not think that plaintiff has set forth

8     sufficient facts connecting Mercer with any actionable

9     statements.

10         And as it relates to Pignotti, I do not think

11    that plaintiff has set forth sufficient facts to

12    demonstrate a claim that would meet the requirements of

13    libel under Virginia law and the *Chapin versus*

14    *Knight-Ridder* case.

15         The words specifically claimed are not set

16    forth.  They're not set forth with any specificity.  The

17    dates are not set forth.  They're insufficient to state a

18    claim.

19         And looking at them as a matter of substance,

20    some of them -- Exhibit H, appears to be Dr. Pignotti

21    responding what she believes to be actions taken by Dr.

22    Federici on her website.  These matters would not be --

23    they would be opinion.  They would not be sufficient to

24    state a claim for libel.

25         And I think without making a judgment now

1   that plaintiff's counsel would have to agree that there's

2   a question here to be decided at some point, maybe not

3   today, about whether or not -- what standard would apply

4   to plead a libel or slander against Dr. Federici and

5   whether or not he's a public figure or limited public

6   figure given that he advertises on the Internet and on

7   television and all these others.

8           But I don't have to decide that now.  But if

9   that issue were to come up, it does appear that there

10  would be some challenge presented to Dr. Federici to

11  credibly assert he's not a public figure or at least a

12  limited public figure.

13          I'm going to grant the motion to dismiss as

14  it relates to tortious interference with contract rights

15  and expectancy because he's not proffered sufficient

16  facts to demonstrate that Mercer or Pignotti

17  intentionally interfered with any contracts.

18          The fact that he is a practicing psychologist

19  does not in and of itself give notice to anyone else that

20  he has contracts with particular clients or that he

21  communicated with those particular clients.

22          And the complaint as set forth alleges that

23  two -- I believe it was two potential clients canceled

24  their appointments because of things that they read on

25  the Internet, not necessarily matters that were set forth

1  by Dr. Pignotti or Dr. Mercer.

2          And finally, with respect to conspiracy to

3  injure in trade business reputation under 18.2499, this

4  complaint does not come close to meeting the requirements

5  of *Ashcroft versus Iqbal* in terms of setting forth facts

6  that plead conspiracy in more than just conclusory terms.

7          So for those reasons, the motion to dismiss

8  will be granted for the reasons just stated.

9          Thank you.

10          MS. ZECH:  Thank you, Your Honor.

11          MS. BAGLEY:  Thank you, Your Honor.

12          MR. RIVERA:  Thank you, Your Honor.

13          THE COURT:  It's granted without prejudice,

14  obviously, as it relates to the 12(b)(6) aspects of it.

15  But the motion to dismiss personal jurisdiction is

16  granted.

17          MS. ZECH:  Thank you.

18          THE COURT:  Thank you.

19          (Proceeding concluded at 12:38 p.m.)

20

21

22

23

24

25

CERTIFICATE OF REPORTER


1

2

3            I, Renecia Wilson, an official court

4   reporter for the United State District Court of Virginia,

5   Alexandria Division, do hereby certify that I reported by

6   machine shorthand, in my official capacity, the

7   proceedings had upon the motions in the case of Ronald

8   Federici vs. Monica Pignotti, et al.

9            I further certify that I was authorized and

10  did report by stenotype the proceedings and evidence in

11  said motions, and that the foregoing pages, numbered 1 to

12  34, inclusive, constitute the official transcript of said

13  proceedings as taken from my shorthand notes.

14            IN WITNESS WHEREOF, I have hereto subscribed

15  my name this 25th day of March, 2011.

16

17                              /s/
                     Renecia Wilson, RMR, CRR
18                   Official Court Reporter

19

20

21

22

23

24

25